## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

MICHAH BOGUE,

                Plaintiff,

    V.                                      Case No. 12-CV-611 WJ/WDS

BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF VALENCIA,

                Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S COMPLAINT

THIS MATTER comes before the Court on Defendant Board of County Commissioners of the County of Valencia's Motion for Summary Judgment on Plaintiff's Complaint (**doc. 23**), filed May 15, 2013.  The Court finds that Defendant's motion is well taken and shall be **GRANTED**.

## BACKGROUND

Plaintiff Micah Bogue was, and is, employed as a Deputy Sheriff in the Valencia County Sheriff's Department ("Department").  In March 2010, she learned that she was pregnant, and that her doctor wanted her restricted to light duty.  On March 10, 2010, she gave her supervisor, Sgt. Alan Montano, and his supervisor, Lt. Simon Martinez, a note from her doctor placing limitations on her ability to work (namely, that she not lift more than 30 pounds, stand in place for prolonged periods, work for more than 40 hours a week or for more than 12 hour shifts, participate in qualifying physical training, or participate in full contact confrontations).  The note also stated that she was able to carry and discharge a firearm, and to escort prisoners or suspects as necessary.  It did not include diagnosis of any medical condition other than pregnancy.

On March 12, 2010, Plaintiff met with Captain Don Donges, who told her that she would not be assigned to light duty within the Department, and that she should turn in all her equipment and the keys to her patrol unit.  Plaintiff told Donges that she believed the Department was treating her unfairly based on her pregnancy by not assigning her to a light duty position.  She subsequently received a letter from Jacque Chavira in the Valencia County Human Resources Department ("Human Resources") placing her on "Leave for Unforeseen Circumstances," with pay, pending an investigation into her complaint of unfair treatment.

On March 30, 2010, Plaintiff received a letter from Chavira stating that although Plaintiff had received a light duty assignment in early 2008, since that time the Department had not allowed field officers to take light duty "because of the lack of the manpower in the field,[1] the hardship to the department and the unavailability of light duty positions."  Doc. 23-4 at 11.  The letter explained that the Department had no light duty positions currently available, and therefore the County would try to place Plaintiff in a position in another County department, if available, although her salary might be cut.  If no position for which Plaintiff was qualified was currently available, but later became available while she was still on leave, she could accept such a position then.  The letter also informed Plaintiff that her administrative leave would end on March 30, 2001, but explained her options for taking leave under the Family and Medical Leave Act ("FMLA"), and gave an April 1, 2010 deadline for Plaintiff to state her intent to take such leave.  In response to the letter, Plaintiff requested both FMLA leave time from the sick leave bank.[2]  On April 8, 2010, Human Resources told her that FMLA leave had been approved

---

[1] The parties agree that the Department employs approximately fifteen certified field deputies.
[2] Valencia County policy allows employees who have used up their sick leave to receive donations of sick leave from other employees.  As of April 1, 2010, Plaintiff had accrued 6.45 hours of sick leave and 34.45 hours of annual leave.

effective April 1, 2010, and lasting until June 24, 2010.  Human Resources also told Plaintiff that the County had approved donations of sick leave from other employees.

In April 2010, Plaintiff received notice of two light-duty positions available, one in the County Assessor's Office and one in the Adult Detention Facility.  Both positions paid $8/hr., approximately $7.30/hr. less than her position as a field deputy, and because the position in the County Assessor's Office was not a position with a law enforcement entity, its benefits did not include law enforcement-specific benefits available to Plaintiff in the Department.  Plaintiff accepted the position in the County Assessor's Office and began work on June 8, 2010.

After a few weeks, a light-duty records keeping position, which paid $2/hr. more than the County Assessor's position, became available in the Department.  Plaintiff discussed the new position with Octa Gillen, the head of the records department, who told her that she would be able to do the job based on her experience as a deputy.  However, when Plaintiff applied for the position, her application was denied.  The Department did not fill the position until after Plaintiff gave birth to her child.

On October 1, 2010, Plaintiff was forced to take leave from her job due to complications from her pregnancy.  At that time, Plaintiff had accrued only 15.94 hours of paid leave.  She gave birth by cesarean section on October 14, 2010.  On October 20, 2010, she contacted Human Resources and requested additional leave donations.  Although county policy mandated that employees could request donated leave only once during a twelve-month period, the County Manager approved an exception, and Plaintiff received further donations of leave.  She remained on leave until December 31, 2012.  When she returned on that date, she received a letter from outgoing Sheriff Rene Rivera placing her on administrative leave for the day.  However, it was

Rivera's last day in office, he was not present in the Department that day, and Human Resources overruled the letter.  Plaintiff reports no problems with the Department since her return.

In total, Plaintiff received ninety-six days, or nearly five months, of paid leave in one year, and more than eight months of job-protected leave.  She also exhausted her FMLA and donated leave, which compelled her to take several weeks of unpaid leave.  The unpaid leave and lower-paid position put Plaintiff in financial difficulties, leading her to sell personal belongings, including the family cars.

Plaintiff filed a formal discrimination charge ("Charge") with the Equal Employment Opportunity Commission ("EEOC") and New Mexico Department of Workplace Solutions, Human Rights Bureau ("NMHRB") on September 27, 2010.  On the charge form, Plaintiff checked the boxes indicating that the alleged discrimination was based on sex and retaliation.[3]  She described the particulars of the discrimination as follows:

> I began working for the Valencia County Sheriff's Department (Respondent) on August 1, 2007.  In January 2010, I became pregnant and on May 27, 2010, I was temporarily assigned to a light duty position in the County Assessor's Office which paid $8.00 per hour versus the $14.00 per hour I was making as a Deputy Sheriff.  On or around June 15, 2010, I learned that there was an opening in the Sheriff's Office for a Records Clerk which paid $9.00 per hour.  I immediately requested that I be reassigned to that position because it paid more and because it was in the Sheriff's Office.
>
> . . . .  On July 22, 2010, I was informed that my request for reassignment was being denied by the Sheriff. . . .  In addition, on July 28, 2010, I was informed that my union and FOP dues were being stopped and that my retirement contributions were being changed to regular PERA.
>
> I believe I was discriminated against due to my sex, female (pregnancy), in violation of Title VII of the Civil Rights Act of 1964, as amended. . . . [4]

---

[3] Plaintiff's Complaint also alleged that the Department retaliated against her for giving a deposition in a disability discrimination lawsuit filed by a former co-worker and Department employee.  She has since voluntarily withdrawn all retaliation claims.  Doc. 24 at 1, n.1.

[4] The omitted portions address Plaintiff's retaliation claim.

On January 17, 2012, Plaintiff amended her Charge by making handwritten revisions to the form.  She wrote "Amended" across the top and checked the box marked "disability."  At the end of the first paragraph of her statement, she wrote, "However, the Respondent failed to provide reasonable accommodation (reassignment) due to complications of pregnancy."  At the conclusion, she wrote, "In addition I believe I was discriminated against due to the Americans with Disabilities Act of 1990, as amended."[5]

On May 22, 2012, Plaintiff received an Order of Nondetermination from the HRB.  The letter did not describe the nature of the charges being addressed, but only provided the charge number.  Plaintiff then filed a complaint in this court alleging (1) sex discrimination in violation of Title VII; (2) disability discrimination in violation of the Americans with Disabilities Act ("ADA"); (3) sex discrimination in violation of the New Mexico Human Rights Act ("NMHRA"); (4) and disability discrimination in violation of the NMHRA.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  Once that burden is met, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial; he may not rest on mere allegations or denials in his own pleadings.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986).  In order to avoid summary judgment, the nonmoving party must put forth enough evidence that a

---

[5] Plaintiff also filed an EEOC/HRB charge on February 4, 2011, alleging retaliation after she participated in a EEOC mediation session with the Department on December 3, 2010.  Doc. 23-8.  However, because Plaintiff has withdrawn her retaliation claims, the Court does not consider this charge.

reasonable jury could return a verdict in the nonmovant's favor.  *Id.* at 249.  A mere scintilla of evidence in the nonmovant's favor is not sufficient.  *Id.* at 252.

## DISCUSSION

### I.     Exhaustion

Defendant argues first that Plaintiff failed to exhaust her administrative remedies with respect to the violations alleged in the complaint.  Exhaustion of administrative remedies is a jurisdictional prerequisite to filing suit under Title VII, the NMHRA, and the ADA.  *See Apsley v. Boeing Co.*, 691 F.3d 1184, 1210 (10th Cir. 2012) ("Under both Title VII and the ADA, exhaustion of administrative remedies is a prerequisite to suit."); *Jaramillo v. J.C. Penney Co.*, 694 P.2d 528, 529 (N.M. Ct. App. 1985) (exhaustion required under the NMHRA).  To exhaust her administrative remedies under Title VII, the NMHRA, or the ADA, a plaintiff must file a charge within 300 days of the alleged discriminatory act.  42 U.S.C. § 2000e-5(e); NMSA 1978 § 28-1-10(A); 42 U.S.C.A. § 12117 (adopting Title VII scheme for ADA enforcement).

### A.     Plaintiff's Sex Discrimination Claims Under Title VII and the NMHRA

Defendant asserts that Plaintiff's Complaint alleges sex discrimination based on the Department's failure (1) to offer her the position in the Adult Detention Facility, and (2) to request sick leave donations from the county as a whole, rather than just the Department. Because Plaintiff's original Charge states only that after she took the position in the County Assessor's office, her request for reassignment to the newly-available Records Clerk position was denied, Defendant contends that the violations alleged in Plaintiff's complaint were not raised in her Charge.  Therefore, Defendant argues, Plaintiff has failed to exhaust administrative remedies for her sex discrimination claim.

The Court disagrees in part.  In ¶¶ 62 and 96 of her Complaint, Plaintiff alleges that the Defendant denied her both the Adult Detention Facility Position *and* available "light duty placements *within the Department*."  Doc. 1 at 10, 16 (emphasis added).  Although an express reference to the Records Clerk position might have been more artful, these statements encompass the allegation in Plaintiff's Charge that the Sheriff denied her request to be assigned to the Records Clerk position.  Accordingly, the Court finds that Plaintiff exhausted her administrative remedies as to her claim that the Department discriminated against her on the basis of sex by not assigning her to the Records Clerk position in the Department.

However, the Court agrees with Defendant that Plaintiff's Charge does not allege that the Department impermissibly discriminated by failing to place her in the Adult Detention Facility position or to request sick leave donations from the entire county, as is alleged in the Complaint.  Thus, the Court finds that the Charge did not exhaust Plaintiff's administrative remedies as to these Department actions.  Because more than 300 days have passed since the alleged discriminatory acts, this failure cannot be amended.  Consequently, the Court dismisses Plaintiff's claims that Defendant violated Title VII and the NMHRA by failing to place her in the Adult Detention Facility position or to request sick leave donations from the entire county, for lack of jurisdiction.  *See Green v. JP Morgan Chase Bank Nat'l Ass'n*, 501 F. App'x 727, 732 (10th Cir. 2012) (unpublished) (the district court should dismiss all unexhausted Title VII claims for lack of jurisdiction rather than grant summary judgment to the opposing party).[6]

**B.**     **Plaintiff's Disability Discrimination Claim Under the ADA**

---

[6] In the following section, the Court addresses Plaintiff's argument that an intake questionnaire submitted to the EEOC exhausted her administrative remedies as to a charge of disability discrimination in violation of the ADA. The Court notes that the intake questionnaire at issue does not reference the alleged failures to assign Plaintiff to the Adult Detention Facility position or to circulate a leave request to the County, and therefore does not alter the Court's conclusion that Plaintiff did not exhaust her administrative remedies as to these claims.

Defendant also argues that Plaintiff failed to exhaust the administrative remedies for her ADA claim because she failed to allege discrimination on the basis of disability until she amended her charge on January 17, 2013, more than 300 days after her request for the Records Clerk position in the Department was denied on July 22, 2010.  Plaintiff argues that although the formal charge was not amended within 300 days of the alleged discriminatory act, she filed an intake questionnaire with the EEOC on September 14, 2010 that clearly indicated her intent to file a claim alleging disability discrimination, and served to exhaust her administrative remedies. The Court finds that under the circumstances here, Plaintiff's intake questionnaire cannot serve as a formal charge raising her ADA claim before the EEOC, and thus that she has failed to exhaust her administrative remedies as to that charge.

The Supreme Court of the United States has held that an intake questionnaire may constitute a charge with the EEOC, if it includes an allegation and the name of the charged party and can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008).  On its face, Plaintiff's intake questionnaire appears to fulfill these requirements: it includes both the names of the charged parties and allegations of discrimination on the basis of sex and disability, expressly stating that she asked to be put on light duty due to medical complications of her pregnancy (specifically, that she was at risk for preeclampsia).  She also checked the box on the intake questionnaire next to a statement reading in part, "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above."  Doc. 24-1 at 4.

However, the Tenth Circuit has held that *Holowecki* does not apply where, as here, "a claimant files an initial intake questionnaire, *then timely files a formal charge that becomes the*

8

*basis of the agency's investigation, all before commencing a lawsuit.*"  *Green*, 501 F. App'x at

731 (emphasis added).  In *Holowecki*, the plaintiff submitted only an intake questionnaire, and

did not follow it with a formal charge form.  The Tenth Circuit concluded,

> Nothing in *Holowecki* indicates that an intake questionnaire must be treated as a
> charge, no matter the circumstances.  In fact, the Court stated the opposite.  *See*
> [*Holowecki*] at 405, 128 S.Ct. 1147 ("[T]he agency is not required to treat every
> completed Intake Questionnaire as a charge."). . . .  [W]e agree with the
> reasoning of a post-*Holowecki* panel of the Third Circuit that it would defeat the
> statutory scheme to find exhaustion where an employee includes a claim in the
> intake questionnaire, but then omits it in a timely subsequent formal charge that
> forms the basis for the administrative proceedings.

*Id.*

Although neither *Green* nor *Barzanty v. Verizon Pa., Inc.*, 361 Fed. App'x 411, 415 (3d

Cir. 2010) (unpublished) are published opinions, this Court finds their reasoning persuasive.  As

the District Court for the Eastern District of Pennsylvania, construing *Barzanty*, has observed,

> If a claim is initially mentioned in the charge questionnaire but is not included in
> the formal charge, then this claim is not exhausted.  Indeed, to allow a plaintiff to
> initially raise a claim with a Charge Questionnaire and then abandon it in his
> formal charge only to reassert that claim in federal court would completely
> subvert the exhaustion requirement.

*Kellam v. Independence Charter School*, 735 F. Supp.2d 248, 253 (E.D. Pa. 2010).  Plaintiff's

intake questionnaire clearly indicates that she believed she had a disability and that the disability

was the cause for the adverse action against her; however, her Charge does not.  There is no

evidence that the EEOC investigated Plaintiff's disability claims; the right-to-sue letter states

only that it "constitutes an Order of Non-determination as to your complaint."  Doc. 23-6 at 10.

Further, Defendant's Position Statement to the EEOC, dated January 14, 2011 (three days before

Plaintiff amended her charge), states, "Although Ms. Bogue's charge of discrimination does not

mention disability discrimination, the County will briefly address such an allegation here

because it was raised during the unsuccessful mediation between the parties on December 3,

2010." Doc. 24-3 at 3.  Thus, the charge that Defendant received did not put it on notice that Plaintiff was alleging discrimination on the basis of disability.

The Court recognizes that the ADA creates a "remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process," and therefore "[t]he system must be accessible to individuals who have no detailed knowledge of the relevant statutory mechanisms and agency processes." *Holowecki*, 552 U.S. at 402-03.  Accordingly, the Supreme Court has held that "[d]ocuments filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies." *Id.* at 406.  However, Congress also imposed the exhaustion requirement to serve "the salutary purposes of (1) providing an opportunity for the administrative investigation of the claimant's allegations; (2) affording the charged party prompt notice of those allegations; (3) promoting the informal resolution of claims; and (4) ensuring the preservation of evidence relating to the claimant's allegations." *Ahuja v. Detica Inc.*, 873 F.Supp.2d 221, 227 (D.D.C. 2012).  Although an intake questionnaire, standing alone, might serve these purposes, an intake questionnaire followed in short order by a formal charge abandoning one of the claims made in the questionnaire cannot.[7]

---

[7] *Holowecki* involved the ADEA., not the ADA.  Noting that the ADEA enforcement mechanisms and statutory waiting periods do not always accord with other employment discrimination statutes, the Court warned, "[E]mployees and their counsel must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination." *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 393 (2008).  In particular, the ADA expressly requires a charge to be "in writing under oath and affirmation," 42 U.S.C. § 2000e-5(b), while the ADEA does not.  *See* 42 U.S.C. § 12117 (incorporating 42 U.S.C. § 2000e-5 into the ADA).  Accordingly, some courts have distinguished *Holowecki* in ADA cases and held that an intake questionnaire that meets *Holowecki*'s requirements, but is not sworn or affirmed, cannot serve as a formal charge.  *See, e.g.*, *E.E.O.C. v. Summer Classics, Inc..*, No. CIV.A. 09-AR-1926-S, 2011 WL 4481914, *6-7 (N.D. Ala. July 6, 2011) (unpublished) (concluding that *Holowecki* did not allow an unsworn questionnaire to stand as a charge under the ADA); *Davenport v. Asbury, Inc.*, No. 3:12-CV-445, 2013 WL 1320696, *6-11 (E.D. Tenn, March 29, 2013) (unpublished) (same).  However, other courts have held that an intake questionnaire meeting the *Holowecki* standard is sufficient to exhaust remedies in an ADA case, in part because courts have applied the *Holowecki* requirements to Title VII cases, and the same regulations (29 C.F.R. § 1601) govern Title VII and ADA charges.  *See, e.g.*, *Arnold v. Federal-Mogul Products, Inc.*, No. 2:11-00126, 2013 WL 652524, (M.D. Tenn. Feb. 21, 2013) (unpublished) (applying *Holowecki* to ADA claims because "federal courts in this Circuit have frequently applied *Holowecki* in assessing the timeliness of Title

Plaintiff argues that although the amended Charge was filed more than 300 days from the dates of the incidents giving rise to her claim of discrimination, the amendments relate back to the time of the filing of the original questionnaire, and therefore the amended Charge is timely filed.[8]  The Court disagrees.  In *Edelman v. Lynchburg College*, 555 U.S. 106 (2002), on which Plaintiff relies, the plaintiff filed a letter with the EEOC that was not offered under oath or affirmation, but was filed within 300 days of the incidents at issue.  After the 300 day period had passed, he filed a formal charge verified by oath or affirmation.  The defendant argued that the district court had no subject-matter jurisdiction because the plaintiff had not filed a timely charge.  The Supreme Court held that the initial letter met the requirements for a charge, and upheld an EEOC regulation allowing an otherwise timely filer to verify a charge after the time for filing has expired.  *Id.* at 109.  The regulation states, "A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein."  29 C.F.R. § 1601.12(b).

However, this regulation, and *Edelman*'s conclusion, do not rescue Plaintiff's ADA claim.  The Tenth Circuit has held that "an amendment will not relate back when it advances a

---

VII cases . . . [and] the same regulations govern both Title VII and the ADA."); *Price v. City of New York*, 797 F. Supp.2d 219, 226-27 (E.D.N.Y. 2011) (same).  The Tenth Circuit does not appear to have applied *Holowecki* directly to an ADA claim, but has applied it to Title VII claims.  *See Semsroth v. City of Wichita*, 304 Fed. App'x 707, 712-13 n.5 (10th Cir. 2008) (unpublished) ("While the *Holowecki* Court addressed the ADEA, we cite cases addressing the ADEA's filing requirements in the Title VII context because the filing provisions of the ADA and Title VII are virtually *in haec verba*, the former having been patterned after the latter." (internal quotation marks and citation omitted)).  However, *Semsroth* did not address whether the plaintiffs' intake questionnaires were sworn or affirmed, deeming them sufficient under *Holowecki* based only on the questionnaires' contents.  *C.f. Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1184 (10th Cir. 2007) (holding that an intake questionnaire satisfied the requirements for a charge based on its contents, "in addition to meeting the EEOC's formal requirements that a charge be written, signed, and verified.").  Here, because Plaintiff's intake questionnaire was signed, but neither sworn nor affirmed, some courts would hold that it cannot serve as a charge solely on that ground.  However, because the case law on this issue is unsettled and the Tenth Circuit does not appear to have directly addressed the question, this Court bases its ruling in the Tenth Circuit's reasoning in *Green*, and takes no position on whether, under *Holowecki*, an otherwise sufficient intake questionnaire that is unsworn and unaffirmed serves as a charge in an ADA claim.

[8] Plaintiff also describes the failure to allege disability discrimination as mere error on the part of the EEOC investigator, who failed to check the box marked "disability" on the portion of the form indicating the basis for the discrimination.  However, such a characterization ignores the absence of any written allegation of disability discrimination in the narrative portion of the unamended Charge, and the subsequent handwritten language added to the narrative portion of amended Charge.

new theory of recovery, regardless of the facts included in the original complaint." *Simms v.*

*Oklahoma ex rel. Dep't of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1327

(10th Cir. 1999); *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1260 n.3 (10th Cir. 1998)

(when an EEOC claim alleged only retaliation, plaintiff's amendment to add a sexual harassment

claim did not relate back to the original charge under 29 C.F.R. § 1601.12(b)).  Plaintiff's

amended Charge attempts to add a disability claim, not to clarify or amplify her allegations of

sex discrimination.  As the Tenth Circuit has noted, "Prohibiting late amendments that include

entirely new theories of recovery furthers the goal of the statutory filing period –giving the

employer notice and providing opportunity for administrative investigation and conciliation."

*Simms*, 165 F.3d at 1327.

      Accordingly, the Court finds that Plaintiff has not exhausted the administrative remedies

relating to her disability discrimination claim, and therefore, the claim is dismissed.

## II.      Merits of the Title VII/NMHRA Claim

      The Court finds that Plaintiff's remaining sex discrimination claim fails on the merits.

Under Title VII, it is unlawful for an employer to discriminate against any individual with

respect to the compensation, terms, conditions, or privileges of employment on the basis of sex.

*See* 42 U.S.C. § 2000e-2(a)(1).  The Pregnancy Discrimination Act ("PDA") of 1978 expanded

Title VII to prohibit employers from discriminating against employees "on the basis of

pregnancy, childbirth, or related medical conditions."  42 U.S.C. § 2000e(k).  In the absence of

direct evidence of discrimination, "[c]laims under the PDA are analyzed under the disparate

treatment analysis applied in Title VII cases," as set forth in the *McDonnell Douglas* shifting

burden inquiry.  *E.E.O.C. v. Ackerman, Hood & McQueen, Inc.*, 956 F.2d 944, 947 (10th Cir.

1992).  Under that inquiry, "if a plaintiff can make out a prima facie case of discrimination, the

burden shifts to the defendant to demonstrate a legitimate non-discriminatory reason for the adverse employment action.  If the defendant meets this burden, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretext."  *Orr v. City Of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).  Because a plaintiff's burden under the NMHRA is "identical" to the burden under Title VII, the analysis of Plaintiff's federal claims that follows applies equally to her state law claims.  *Id.* at 1149 n.5.

The Tenth Circuit has construed cases alleging failure to place the employee in a modified duty position as analogous to failure-to-hire or failure-to-promote cases.  *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1192 (10th Cir. 2000).  Accordingly, a plaintiff meets the burden to prove a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) she was qualified for the modified-duty position sought; (3) she was denied a modified-duty position; and (4) she was denied that position "under circumstances which give rise to an inference of unlawful discrimination," including "evidence that similarly-situated employees were treated more favorably" than the plaintiff.[9]  *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

_____

[9] FN:  Defendant argues that Plaintiff's prima facie case fails because Plaintiff did not suffer an adverse employment action as required by *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).  According to the Tenth Circuit, only acts that "constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits will rise to the level of an adverse employment action."  *Barone v. United Airlines, Inc.*, No. 08-1348, 2009 WL 4547800, at *10 (10th Cir. 2009).  Here, the Court finds that Plaintiff suffered an adverse employment action because her reassignment to the County Assessor's Office position resulted in a significant change in benefits, namely a reduction in salary and loss of law enforcement-specific benefits.  Defendant argues that Plaintiff could not have suffered an adverse employment action because she requested light duty, leaves, and donations of sick leave, and received them all.  However, Defendant cannot deny that the light duty that was made available to Plaintiff significantly reduced her pay and altered her benefits.  *See also E.E.O.C. v.  Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1192 (10th Cir.) (parties conceded that the plaintiffs "suffered an adverse employment action when they were denied modified-duty assignments"); *Keeton v. Flying J, Inc.*, 429 F.3d 259, 268 (6th Cir. 2005) ("[R]eassignments . . . do not constitute adverse employment actions unless they carry with them a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."  (internal quotation marks and citation omitted)).

Here, it is undisputed that as a pregnant woman, Plaintiff was a member of a protected class, and that she was denied the modified-duty position she sought.  Whether she has fulfilled the second and fourth prongs of her prima facie case is a closer call.  As to qualifications, "[t]he relevant inquiry at the prima facie stage is not whether an employee or potential employee is able to meet all the objective criteria adopted by the employer, but whether the employee has introduced some evidence that she possesses the objective qualifications necessary to perform the job sought."  *Id.* at 1194.  Plaintiff asserts that she was qualified for the records clerk position because her duties as deputy had familiarized her with the software required, and that Octa Gillen, the head of the Records department, told her she was qualified for the position:

> I had already contacted Octa Gillen with our records department. . . .  And I said, "Am I able to -- Do I have enough of what it takes to be able to do that job?"
>
> And [Gillen] says, "Yes, there's -- " you know, I already know the system, I've already helped put in citations.  And she says, "The only thing is, is, you know, what paperwork that would need to go to the court, which is really easy, how that procedure goes with us."

Bogue Dep. 112:17-113:9, Doc. 23-2 at 9-10.  However, Gillen's reply acknowledges that Plaintiff was not trained in all the position's requirements, namely filing paperwork with the court.  The need for even minimal training suggests that Plaintiff did not possess the objective qualifications to perform the job.

As for circumstances giving rise to an inference of unlawful discrimination, Plaintiff has not shown that similarly-situated employees were treated more favorably than she.  *See E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1197 (10th Cir. 2000) (that similarly-situated employees were treated more favorably than the plaintiff supports an inference of unlawful discrimination).  In her deposition, Plaintiff stated that a male Deputy Sheriff, Pat Duran, received light duty status for an injury incurred off duty (namely, by putting his hand through the

14

windshield of his personal vehicle while fighting with his girlfriend).  Bogue Dep. at 139:5-22,
Doc. 24-8 at 4.[10]  This fact alone does not show that Duran received more favorable treatment
than Plaintiff; both Plaintiff and Duran received light duty assignments to accommodate medical
conditions arising from off-duty activities.  Plaintiff describes Duran's light duty position as
within the County, like her own position with the assignment, not within the Department.  She
also presents no evidence that Duran's light duty position carried the same salary and benefits as
his deputy sheriff position, or that Duran's light duty position provided higher salary or better
benefits than her own.  Although the Court recognizes that "[n]othing in the case law in this
circuit *requires* a plaintiff to compare herself to similarly-situated co-workers to satisfy the
fourth element of her prima facie case," Plaintiff has not offered any other evidence to support an
inference of discrimination.  *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1195 n.6 (emphasis in
original).

      However, even assuming that Plaintiff has met the requirements of a prima facie case, the
Court finds that she has not met her burden to show discrimination under the remainder of the
burden-shifting test.  First, Defendant has demonstrated a legitimate, non-discriminatory reason
for failing to appoint Plaintiff to the Records Clerk position – that she did not possess the
necessary training:

> [B]ecause of the training required for the position, the sheriff needed to fill it with
> a permanent employee.  It wasn't reasonable to fill the position on a short term
> basis with someone such as Ms. Bogue, who had no intention of remaining the
> position long term—or even for more than the few weeks she had left on light
> duty.  Efficient use of training resources and skillful performance of duties are
> legitimate operational considerations."

Doc. 24-3 at 3.  Second, Plaintiff has failed to show that the proffered reason is pretext.  As
noted above, Gillen identified functions of the job for which Plaintiff was not trained.  Although

---

[10] Plaintiff also cites to Bogue Dep. 75:3-15 for information about Duran's light duty, but this page is not included in
any court pleadings.

Plaintiff disagrees with the Department's assessment of her qualifications, she has not produced any evidence to show the assessment is incorrect.

Finally, in this Circuit, courts "assessing whether plaintiffs have shown pretext . . . are obliged to consider their evidence in its totality." *Orr v. City of Albuquerque*, 531 F.3d 1210, 1215 (10th Cir. 2008). The totality of Plaintiff's treatment by the Department does not support her discrimination claim. Although the FMLA only mandates twelve weeks of job protected leave, the Department held Plaintiff's position open for her for thirty-one weeks. During the twelve weeks of FMLA leave that Plaintiff received, she was paid at her deputy salary due to donations of sick leave from other employees. Although County policy limits employees to one request for donated leave within a twelve-month period, Human Resources obtained permission to make an exception in Plaintiff's case.[11] And although the Department initially told Plaintiff no light-duty positions were available, when such positions came available she received one, albeit at a lower rate of salary and with different benefits than her position as deputy. These accommodations are inconsistent with an animus against Plaintiff based on her pregnancy.

Accordingly, the Court grants summary judgment for Defendant on Plaintiff's sex discrimination claim.

## CONCLUSION

For the foregoing reasons, the Court hereby:

**DISMISSES** Plaintiff's claims that Defendant violated Title VII and NMHRA by failing to place her in the Adult Detention Facility position or to request sick leave donations from the entire county, for lack of subject-matter jurisdiction;

---

[11] The letter that Plaintiff received from outgoing Sheriff Rivera on her return to work, placing her on administrative leave for that day, is unexplained, but it was rendered without effect, and does not in itself provide evidence of discrimination on the basis of Plaintiff's sex or pregnancy.

**DISMISSES** Plaintiff's claims of disability discrimination in violation of the ADA, for lack of subject-matter jurisdiction; and

**GRANTS** Defendant's Motion for Summary Judgment on Plaintiff's Complaint (**doc. 23**) on Plaintiff's claim that Defendant violated Title VII and NMHRA by failing to appoint her to the Records Clerk position in the Department.

**SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE